# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# EL PASO DIVISION

| | |
|---|---|
| **GURMEET SINGH,** § | |
| Petitioner, § | |
| § | |
| v. § | EP-26-CV-00155-DB |
| § | |
| **CURTIS TAYLOR,** *in his official capacity* § | |
| *as Warden of the Camp East Montana* § | |
| *Detention Center, et al.,* § | |
| Respondents. § | |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered Petitioner Gurmeet Singh's "Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241," filed on February 3, 2026, ECF No.[1] 9. After due consideration and for the reasons stated herein, the Court grants the Petition. Respondents are hereby ordered to immediately release Petitioner from custody subject to reasonable conditions of supervision. The parties must notify the Court of the status of Petitioner's release no later than February 13, 2026.

## BACKGROUND

Petitioner is an Indian national who entered the United States in 2024 and has a final order of removal since December 11, 2024. ECF No. 9 at 4. On January 7, 2025, Petitioner was released from custody under an order of supervision.[2] *Id. See* ECF No. 8. As part of Petitioner's terms of

---

[1] "ECF No." refers to the Electronic Case Filing ("ECF") number for documents docketed in this matter. When a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the page numbers assigned by the ECF system.

[2] The parties dispute whether this release was under an "Order of Release on Recognizance," which is only available to those discretionarily detained under 8 U.S.C. § 1226(a), or under "interim parole," which presumably refers to 8 C.F.R. § 212.5(b), which provides for parole on a "case-by-

release, he was required to attend periodic check-ins with U.S. Immigration and Customs Enforcement's New York City field office. *Id.* at 5. On May 28, 2025, he was detained at one such check-in and claims his immigration-related documents were confiscated. *Id.* At the time of his detention,[3] Petitioner's one year parole had not expired nor was he given any written notice as to why his release was being revoked. *Id.*

In their Response, ECF No. 11, Respondents include the sworn declaration of Assistant Field Office Director[4] Angelo Garite, ECF No. 11-1, detailing removal efforts to date. On September 9, 2025, Respondents claim that a deportation officer "added [Petitioner] to a spreadsheet listing Indians who need travel documents and submitted the spreadsheet to the POC for Indian travel documents." ECF No. 11-1 at 3. Travel documents remained pending on October 1, 2025, and October 22, 2025. *Id.* On November 6, 2026, the case officer was still attempting to obtain travel documents noting they did not have a passport for Petitioner. *Id.* On December 12, 2026, Petitioner was transferred to Camp East Montana in El Paso, Texas to be staged for an approved ICE charter to India from El Paso scheduled for December 14, 2025. *Id.* That same day, ERO El Paso was notified the charter was rescheduled for Alexandria, LA and Petitioner could not

---

case basis for 'urgent humanitarian reasons' or 'significant public benefit,'" provided that the noncitizen does not pose a danger or a flight risk. *See* ECF No. 9 at 4. Resolution of this fact is unnecessary for the adjudication of this case.

[3] Petitioner also claims he expressed a fear of returning to India at this time. ECF No. 9 at 5. On August 4, 2025, a deportation officer informed Petitioner a credible fear interview was being scheduled. *Id.* At some point, an ICE official came to Petitioner while detained and told him he must sign a form that he wished to return to India, and Petitioner complied, albeit under claims of duress and compulsion. *Id.* at 6. To date, Petitioner has not received a credible fear interview but continues to assert a fear of returning to India in the immigration courts. *Id.*

[4] Garite is employed by the Department of Homeland Security, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations division. ECF No. 11-1 at 1.

be transferred in time to make it. *Id.* As of Respondents' February 5, 2026, Response, Petitioner is currently pending rescheduling for the next India charter flight which is currently a date to be determined. *Id.*

On Feburary 3, 2026, Petitioner filed his "Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241," ECF No. 9, requesting his immediate release from immigration custody on three grounds: (1) under *Zadvydas v. Davis*, 533 U.S. 678 (2001), his detention has become unconstitutionally prolonged because Respondents cannot show that his removal is significantly likely to occur in the reasonably foreseeable future; (2) Respondents violated Petitioner's due process rights when they arbitrarily re-detained him without notice or a hearing after having previously granted him release; and (3) Respondents have failed to comply with their own regulations with respect to mandatory post-order custody review because Petitioner has not received post-order custody reviews at the 90-day and 180-day marks as required. ECF No. 9 at 2. Respondents filed a response, ECF No. 11, and Petitioners replied, ECF No. 12.

## LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. CONST., Art. I, § 9, cl. 2). This includes immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The petitioner seeking habeas relief must demonstrate they are in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

The statutory provision that governs the Court's review in this case is 8 U.S.C. § 1231. Under § 1231(a)(1)(A), when a noncitizen is ordered removed, the Attorney General has 90 days to remove them from the United States. During this 90-day removal period, DHS and ICE are required to detain the noncitizen. Upon the conclusion of the 90-day removal period the statute allows for either continued detention or release under supervision. 8 U.S.C. § 1231(a). Although the statute gives the Attorney General the discretion to continue detaining a noncitizen in this situation, this detention is subject to the limits of the Fifth Amendment's Due Process clause. *See Zadvydas*, 533 U.S. at 690–692.

In *Zadvydas v. Davis* the Supreme Court interpreted Section 1231(a)(6), the provision that allows for detention beyond the 90-day removal period, to limit post-removal-period detention to a period "reasonably necessary to bring about the alien's removal from the United States." *Id.* at 689. The Court held that post-removal detention for six months is "presumptively reasonable." *Id.* at 701. Beyond six months, if removal is no longer reasonably foreseeable, continued detention is not authorized by the statute. *Id.* at 699. Under *Zadvydas,* if a noncitizen provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future in a habeas corpus petition, the Government must respond with evidence sufficient to rebut that showing. *Id.* at 701.

After the Supreme Court decided *Zadvydas,* DHS promulgated regulations to implement the newly established constitutional constraints. *See* 8 C.F.R. §§ 241.4, .13; 66 Fed. Reg. 56967, 56969 (Nov. 21, 2001) (explaining the *Zadvydas* decision and stating that the new regulations were issued to provide a process for DHS to determine whether there is a significant likelihood of

removal in the reasonably foreseeable future). Under the regulations, the district director is required to conduct a post-order custody review ("POCR") before the 90-day removal period expires if the noncitizen's removal cannot be accomplished during the removal period. *See* 8 C.F.R. § 241.4(k)(1)(i). If the noncitizen is not released or removed at the time of the initial POCR and has cooperated with the removal process, he or she must receive a second review three months later, or after 180 days have passed from the date the removal period began. 8 C.F.R. § 241.4(k)(2)(ii). Additionally, if, at any point during or after the § 241.4 custody review process, a noncitizen "submits, or the record contains, information providing a substantial reason to believe that the removal of a detained [noncitizen] is not significantly likely in the reasonably foreseeable future, [ICE] shall treat that as a request for review and initiate the review procedures under [8 C.F.R.] § 241.13." 8 C.F.R. § 241.4(i)(7). Pursuant to § 241.13, in cases where there is no "significant likelihood of removal" and "no special circumstances justifying continued detention," ICE "shall promptly make arrangements for the release of the [noncitizen] subject to appropriate conditions." 8 C.F.R. § 241.13(g)(1).

## **ANALYSIS**

The Court finds Petitioner's three grounds for relief meritorious warranting immediate release. First, after nearly fourteen months in immigration custody, Petitioner's removal is not significantly likely to occur in the reasonably foreseeable future where Respondents assert he will be rescheduled for the next charter flight to India at some unspecified date in the future. Second, Respondents violated Petitioner's procedural due process rights by re-detaining him in May 2025 without notice or an opportunity to challenge the grounds for revocation after previously releasing

him from custody. Finally, Respondents have violated Petitioner's due process rights by failing to conduct any post-order custody review at all since May 2025.

A.  *Zadvydas v. Davis*

Generally, when a noncitizen is ordered removed from the United States, removal should occur within ninety days. 8 U.S.C. § 1231(a)(1)(A). That removal period ordinarily begins when the noncitizen is subject to a final order of removal. *See id.* § 1231(a)(1)(B). During this removal period, "the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). The removal period may be extended in at least three circumstances. Relevant here, a noncitizen may be detained beyond the removal period if he is "(1) inadmissible, (2) removable as a result of violations of status requirements, entry conditions, or the criminal law, or for national security or foreign policy reasons, or (3) a risk to the community or unlikely to comply with the removal order." *Johnson v. Guzman Chaves*, 594 U.S. 523, 528–29 (2021) (citing 8 U.S.C. § 1231(a)(6)). If any of these grounds apply, the statute imposes no limit on the time a person may be detained. Because "[a] statute permitting indefinite detention . . . would raise a serious constitutional problem" the Supreme Court has "read an implicit limitation" into the statute and has held that a noncitizen may only be detained for "a period reasonably necessary" to effectuate their removal. *Zadvydas*, 533 U.S. at 689–90. This period is presumptively six months. *Id.* at 701. After the presumptively reasonable period and once the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must rebut this showing or release the noncitizen. *Id.*

Here, Petitioner has been detained at least eight months, at most fourteen. Regardless of whether this Court opts to start the clock since Petitioner's removal order became administratively final on December 11, 2024, or when he was re-detained on May 28, 2025, his detention has long passed the presumptively reasonable 6-month mark. Petitioner asserts he has met his initial burden under *Zadvydas* because (1) officials have had nearly 14 months to remove him but have failed to do so; (2) officials have not made clear whether they possess all the necessary travel documents required to remove him to India, including a passport; and (3) despite a stated intention to put him on a plane to India, officials have failed to do so and cannot provide any date by which such a flight might occur. ECF No. 9 at 10.

Respondents fail to meaningfully rebut any of these contentions. In fact, Garite's declaration reinforces each of Petitioner's assertions. *See generally* ECF No. 11-1. Respondents in fact have not removed Petitioner, do not confirm they have all necessary travel documents to remove Petitioner to India, and merely assert Petitioner will be rescheduled for a flight on some unspecified date, without so much as even a general timeline for the Court's consideration. Although Respondents advise the December 2025 failed flight was due to last minute changes of destination, this Court cannot deem removal is reasonably foreseeable as long as good faith efforts continue. Such a standard "would seem to require an alien seeking release to show the absence of any prospect of removal— no matter how unlikely or unforeseeable—which demands more than our reading of the statute can bear." *Zadvydas*, 533 U.S. at 702. Accordingly, the Court finds Respondents failed to rebut Petitioner's assertion that there is no *significant* likelihood of his removal in the reasonably foreseeable future, making any continued detention unlawful.

B.    Procedural Due Process

Further, Respondents violated Petitioner's procedural due process rights by re-detaining him in May 2025, without notice or an opportunity to challenge the grounds for revocation, after previously releasing him from custody. Regardless of whether Petitioner was released on January 7, 2025, under an order of recognizance or parole, Respondents make no contention in their Response that Petitioner was given the required constitutional minima of due process. Assuming Petitioner was previously released on parole, Respondents would have had to comply with the procedures set out in 8 C.F.R. § 212(e)(2)(i). Respondents do not argue they did so. Moreover, without the need to specify the exact procedures Petitioner would have been entitled to if he had been released on an order of recognizance, Respondents do not rebut Petitioner's assertion he was not afforded any process whatsoever. Respondents' conduct violates the fundamental requirements of due process that a person be afforded notice and opportunity to be heard "at a meaningful time and in a meaningful manner" when revoking a protected liberty interest. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Accordingly, Petitioner establishes Respondents violated his due process rights when they re-detained him in May 2025, making his continued detention unlawful.

C.    Post-Order Custody Review

As the third and final basis for immediate release, the Court finds Respondents' failure to conduct post-order custody reviews at the 90-day and 180-day marks, as required by regulations, constitutes a denial of due process. After the Court's decision in *Zadvydas*, "DHS promulgated regulations to implement the newly established constitutional constraints." *Bonitto v. Bureau of Immigr. & Customs Enforcement*, 547 F.Supp.2d 747, 752 (S.D. Tex. 2008). In their Response, Respondents do not dispute Petitioner's allegations that they have failed to follow their own

regulations by failing to conduct post-order custody reviews after 90-days and 180-days in their custody. The Response merely lays out the framework under which Respondents could extend the detention period and say they did so in their discretion. ECF No. 11 at 1. Such conclusory rationale will not pass muster. Without more, it is clear this failure to act constitutes a deprivation of Petitioner's due process rights. After all, "a statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Zadvydas*, 533 U.S. at 690.

## CONCLUSION

For the reasons stated above, Petitioner has established he is entitled to habeas relief based on *Zadvydas v. Davis* and the Fifth Amendment's Due Process Clause. Accordingly, the Court issues the following orders:

**IT IS HEREBY ORDERED** Petitioner Gurmeet Singh's "Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241," ECF No. 9, is **GRANTED**.

**IT IS FURTHER ORDERED** Respondents **SHALL IMMEDIATELY RELEASE** Petitioner from custody subject to reasonable conditions of supervision **by no later than February 10, 2026.**

**IT IS FINALLY ORDERED** the parties **SHALL CONFER AND FILE** a joint status report confirming Petitioner has been released and advising the Court whether any matters remain to be resolved in this case **by no later than Feburary 13, 2026**.

**SIGNED** this **9th** day of **Feburary 2026**.

_____
THE HONORABLE DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE